UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY WARE and DIANE T. WARE, ) ) Plaintiffs, ) ) v. ) ) WIND TRANSPORT SOLUTIONS, INC., ) et al., ) ) Defendants. ) | No. 4:23-cv-00300-AGF |

# MEMORANDUM AND ORDER

This matter is before the Court on the motion to exclude certain opinions from Plaintiffs' expert witness, William E. Hampton, filed by Defendants Wind Transport Solutions, Inc. ("Wind"), SB Transport, Inc. ("SB"), and Jose Francisco Ramirez' (collectively "Defendants"). ECF No. 109. Plaintiffs Timothy and Diane Ware filed their response (ECF No. 112), and Defendants filed their reply (ECF No. 126). This matter is now fully briefed. Because the Court finds that no oral argument is necessary to decide the issues, the motion is ripe for disposition. For the reasons set forth below, the Court will grant in part and deny in part the motion to exclude.

Also before the Court is Plaintiffs' motion for leave to file exhibit in sur-reply (ECF No. 130) and amended motion for leave to file exhibit in sur-reply (ECF No. 132). As discussed below, these motions will be denied.

## Background

A.   <u>Plaintiffs' Claims</u>

Plaintiff Timothy Ware first filed this case in the Circuit Court of Franklin County, Missouri, on January 5, 2023. ECF No. 4. Plaintiff Timothy Ware's claims arise out of an October 26, 2020, incident in which he and Defendant Ramirez were involved an automobile accident (the "Incident").[1] On March 10, 2023, Defendant Wind removed the case to this Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446.

On October 5, 2023, Plaintiff filed a consent motion for joinder of Diane Ware, Plaintiff Timothy Ware's wife, as a Plaintiff and Firemen's Insurance Company of D.C. and "John or Jane Doe" as Defendants. ECF No. 31. Also on October 5, 2023, Plaintiff Timothy Ware filed a consent motion for leave to file an amended complaint. ECF No. 33. The Court granted both motions. ECF No. 36.

---

[1] There are three separate motor vehicle accidents relevant to the facts of this case. The "First Crash" occurred about an hour before the Incident and involved third parties who are not before the Court. ECF No. 115-8. Mr. Ware, a fireman working for the St. Clair Fire Protection District, responded to the First Crash and parked his fire truck behind that accident. The "Second Crash" occurred just a few minutes before the Incident and involved Mr. Ware's fire truck and another semi-truck, whose driver has never been located or identified. The Incident itself is the third crash and is the only one at issue in this case.

In the Amended Complaint, Plaintiffs raise eight counts[2] against several Defendants: Count I for negligence against Defendants Doe and Ramirez'; Count II for "reckless conduct" against Defendants Doe and Ramirez'; Count III for negligence per se against Defendants Doe and Ramirez'; Count IV for negligent infliction of emotional distress against Defendants Doe and Ramirez'; Count V for respondeat superior against Defendants Wind and SB; Count VI for negligent entrustment against Wind and SB; Count VII for uninsured motorist proceeds against Defendant Firemen's Insurance;[3] and Count VIII in which Plaintiff Diane Ware raises a claim of loss of consortium against all Defendants. Plaintiffs seek actual damages, punitive damages, and damages for loss of consortium. ECF No. 37. Defendant subsequently dismissed all claims against the unidentified Doe Defendant. ECF Nos. 98 and 99.

B.   Mr. Hampton's Opinions

Plaintiffs hired Mr. William E. Hampton, Sr., of W. E. Hampton & Associates, Inc. to testify as an accident reconstruction expert on their behalf. Mr. Hampton's report sets out his opinions as follows:

1.   SB Transport Inc. had an unqualified and unsafe driver, Jose Francisco Ramirez Ramirez operating a vehicle under their operating authority, and had knowledge of three moving violations just prior to hiring him.

---

[2]   While Plaintiffs' Amended Complaint includes headings setting out nine counts, the section that Plaintiffs label "Count I" contains only general allegations applicable to all other counts and does not itself raise a cognizable cause of action.

[3]   Following a successful mediation, on May 29, 2024, Plaintiffs voluntarily dismissed all claims against Firemen's Insurance. ECF No. 72.

3

2. The crash occurred 700 to 800 feet beyond the curve noted in the Mile Marker identification.

3. Jose Francisco Ramirez Ramirez failed to maintain a careful lookout, [sic] and failed to follow the guidance for a commercial motor vehicle driver to look 12-15 second ahead.

4. Jose Francisco Ramirez Ramirez operated his vehicle at an unsafe speed due to raining and wet conditions.

5. If Jose Francisco Ramirez Ramirez had been attentive, he had the time and distance to slow his vehicle and stop prior to striking the Ware fire truck.

6. If Jose Francisco Ramirez Ramirez had slowed his vehicle, he could have moved over into the passing lane, after other traffic moved ahead and avoided striking the Ware fire truck.

7. Jose Francisco Ramirez Ramirez violated part 392.14 and guidance set forth by the [Federal Motor Carrier Safety Administration] and the Missouri Commercial Drivers [sic] License Manual by not using "Extreme Caution" while operating in the rain wet roadway environment.

8. Jose Francisco Ramirez Ramirez violated the Missouri State Statutes of 304.012 by failing to exercise the highest degrees of care by failing to keep a proper lookout, driving to [sic] fast for conditions, and failing to yield to a stationary emergency vehicle, violating statute 304.022.

9. Jose Francisco Ramirez Ramirez [sic] unsafe driving actions were the cause of this specific crash.

ECF No. 109-1 at 11–12.

C. The Motion to Exclude

On March 10, 2025, Defendants filed their motion to exclude certain of Mr. Hampton's opinions. ECF No. 109. Specifically, Defendants argue that Mr. Hampton's opinions 2, 3, 4, 5, 6, 7, 8, and 9 should be excluded under Federal Rule of Evidence 702 because they are not reliable, his report is factually inaccurate, the methodology he used

4

to arrive of the challenged conclusions is insufficiently reliable, and the report relies on speculation and unsupported legal conclusions that make his opinions unhelpful to the trier of fact.  Defendants do not challenge Mr. Hampton's qualifications to testify as an expert in accident reconstruction.

The bulk of Defendants' arguments focus on Mr. Hampton's opinion regarding where the Incident occurred.  Specifically, Defendants challenge Mr. Hampton's description that the collision between Mr. Ware and Mr. Ramirez's vehicles occurred "approximately 700 to 800 feet east of Mile Marker 233 [on Eastbound Interstate 44 in Missouri], or 233.6, past a curve, and in a straight location. . . ." ECF No. 109-1 at 2. According to Defendants, Mr. Hampton's conclusion regarding the location of the Incident is inconsistent with all testimony and evidence in the record, including the testimony of Mr. Ware himself.  Defendants infer that because Mr. Hampton's other opinions stem from his inaccurate determination of the location of the Incident, the remainder of his opinions are similarly unreliable and inadmissible.

Defendants argue that Mr. Hampton improperly based his opinions on a visit to the crash site with Mr. Ware to the exclusion of other contradictory evidence.  According to Mr. Hampton, at this site visit four years after the Incident, Mr. Ware pointed out the location of the Incident and Mr. Hampton observed debris on the side of the road that Mr. Ware told him was there at the time of the Incident.  Mr. Hampton then measured the distance from the location of this debris to what he has determined was the sight line Defendant Ramirez would have had on the day of the Incident.  Based on this

5

measurement, Mr. Hampton concluded that the Incident occurred "700 to 800 feet beyond the curve noted in the Mile Marker identification." *Id.* at 11.

Mr. Hampton failed to record the GPS coordinates of this location, and all photos he took during the site visit were lost. Because he failed to make a record of this location, Defendants argue that Mr. Hampton cannot point to any record evidence supporting his conclusions.

Defendants then point to several other pieces of evidence, including testimony from Mr. Ware himself, that call into question Mr. Hampton's conclusion regarding the location of the Incident. According to Defendants, the lack of evidence supporting Mr. Hampton's conclusions, and the existence of contradictory evidence, shows that Mr. Hampton's conclusions are based on mere speculation and conjecture. Defendants further contend that Mr. Hampton arrived at his other conclusions using an unreliable methodology and an unreliable application of his methodology to the facts of this case because those conclusions rely on where Mr. Hampton placed the Incident.

Plaintiffs argue that Defendants improperly ask the Court to make a factual determination regarding the location of the Incident and that, regardless, Defendants have failed to show that Mr. Hampton's conclusions are the result of speculation. Plaintiffs argue that the Google Map pin that Mr. Ware testified was the approximate location of the accident should not be relied on because Mr. Ware testified that it was merely an approximation. Plaintiffs state that other evidence also supports that the Incident did not occur at the location of the Google Maps pin, including some testimony of Defendant Ramirez. Plaintiffs contend that because Mr. Hampton's opinions "fit" the facts of the

6

case and are based on "what is known," they are admissible.  Similarly, Plaintiffs argue that any potential factual inconsistencies go to the weight to be given to Mr. Hampton's opinions and not their admissibility.  Plaintiffs request oral argument.

In their reply, Defendants restate much of their arguments regarding the unreliability of Mr. Hampton's conclusions.  Defendants state that they are not asking the Court to make a factual determination regarding the location of the Incident but are instead challenging the bases of Mr. Hampton's location of the Incident, i.e., Mr. Ware's self-serving testimony and the location of debris on the side of the road during the site visit four years later.  Defendants further emphasize that Mr. Hampton cannot produce photographs or GPS evidence of where he placed the Incident, which they insist only further undermines the admissibility of his opinions.

Additionally, Defendants point out that Mr. Hampton's calculations regarding the Incident's location do not make sense.  They state that Mr. Hampton's statement that the accident occurred "approximately 700 to 800 feet east of Mile Marker 233 [on Eastbound Interstate 44 in Missouri], or 233.6, past a curve, and in a straight location. . . ." (ECF No. 109-1 at 2) cannot be true.  Defendants ask the Court to take judicial notice of the fact that there are 5,280 feet in one (1) mile, and therefore Mile Marker 233.6 cannot be 700 to 800 feet east of Mile Marker 233 as Mr. Hampton's report suggests.  Defendants also point out that Plaintiffs inaccurately argue that Defendants are not challenging Mr. Hampton's methodology.

7

D.     The Motion for Leave to File Sur-reply

On April 16, 2025, Plaintiff filed (1) a motion for leave to file exhibit in sur-reply (ECF No. 130); (2) a memorandum in support of the motion (ECF No. 131); (3) an amended motion for leave to file exhibit in sur-reply (ECF No. 132); and (4) a memorandum in support of the amended motion (ECF No. 133).  Though the two motions are essentially identical, the Court will address only the amended motion and will deny the original motion as moot.

Plaintiffs request permission to file an affidavit in sur-reply to Defendants' motion to exclude.  Plaintiffs cite to a single case from the Northern District of California for the contention that courts permit the filing of sur-replies "where there is no prejudice, and it would allow the Court to thoroughly consider the parties' arguments."  ECF No. 132 at 1 (citing *Leuzinger v. Cnty. of Lake*, 253 F.R.D. 469, 477 (N.D. Cal. 2008)).  Plaintiffs attach to the motion the Affidavit of Mr. Ware in which he recounts how he related his recollection of where the Incident occurred to Mr. Hampton on the day of the site visit.  The Affidavit provides no details about the precise location of the Incident and instead merely offers further support for Mr. Hampton's account of what occurred during the site visit.  In the memorandum in support, Plaintiffs argue that the Court should accept the Affidavit for its consideration of the motion to exclude because "Tim Ware is the ultimate first-hand source."  ECF No. 133 at 3.

**Legal Standard**

The admission of expert testimony in this Court is governed by Federal Rule of Evidence 702, which provides that:

8

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charged trial judges with a "gatekeeping" role to screen expert testimony for relevance and reliability. 509 U.S. 579, 590–93 (1993); *see also Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citation omitted). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing *Daubert*, 509 U.S. at 589).

In the most recent amendment to Rule 702, made effective on December 1, 2023,[4] the advisory committee's note clarifies the Court's initial gatekeeping function and emphasizes that proponents of expert testimony must establish admissibility of the proffered testimony by a preponderance of the evidence.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also Word v. Mine Safety Appliances Co.*, No. 5:14-CV-00445-BRW, 2016 WL 3034045, at *2 (E.D. Ark. Mar. 25, 2016) (stating "[w]hen a party proffers an expert witness, deciding whether Rule 702 is satisfied is a preliminary issue governed by Federal Rule of Evidence 104(a)[, which] requires the proponent of evidence to establish its admissibility by a preponderance of the evidence."); *United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir. 1993) ("Before admitting scientific expert testimony, the court must conclude, pursuant to Federal Rule of Evidence 104(a) that the proposed testimony constitutes (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.") (citing *Daubert*, 509 U.S. at 592) (footnote omitted).  "The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The advisory committee's note also states that "many courts have held that the critical

---

[4]     The advisory committee's note clarifies that this amendment does not impose any new, specific procedures, but instead "is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

10

questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"The inquiry envisioned by Rule 702 is a flexible one," designed to exclude "vague theorizing based on general principles" or "unsupported speculation," but not requiring an opinion to be "a scientific absolute in order to be admissible." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914–16 (8th Cir. 2017) (cleaned up); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141–42 (1999) ("[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability opinion."); *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands.") (citation omitted). Further, Rule 702(d) has been amended to emphasize that the reliability analysis applies to each opinion offered. Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

## Discussion

A.  <u>The Court Will Exclude Certain of Mr. Hampton's Opinions</u>

Plaintiffs have not shown by a preponderance of the evidence that Mr. Hampton's conclusion regarding the location of the Incident is reliable, and therefore this opinion

11

and the opinions that rely on this conclusion will be excluded.  To clarify, the issue raised in Defendants' motion is whether certain of Mr. Hampton's opinions should be excluded under Federal Rule of Evidence 702.  The Court makes no factual determination about the precise location of the Incident.  However, because the Court finds that Mr. Hampton's opinion regarding where the Incident occurred is not based on sufficient facts or data, that opinion and Mr. Hampton's subsequent analysis and opinions based on that opinion will be excluded.

Plaintiffs have failed to carry their burden to show that it is more likely than not that Mr. Hampton's conclusion regarding the location of the Incident is reliable.  In his expert report, Mr. Hampton states that the Second Crash between an unidentified truck and Mr. Ware's fire truck occurred "approximately 700 to 800 feet east of Mile Marker 233 [on Eastbound Interstate 44 in Missouri], or 233.6 . . . ."  ECF No. 109-1 at 2.  This statement is self-refuting and conflicts with other testimony and evidence.  As pointed out by Defendants, there are 5,280 feet in one (1) mile.  Six-tenths of a mile measures 3,168 feet.[5]  Therefore a location 700 to 800 feet east of Mile Marker 233 cannot be six-tenths of a mile east of Mile Marker 233 at Mile Marker 233.6, as Mr. Hampton states.  But there is additional ambiguity in Mr. Hampton's description: is the Second Crash to have

---

[5] The Court takes judicial notice of these facts as they are not subject to reasonable dispute, their accuracy can readily be determined from accurate sources, and doing so is not unfair to any party.  Fed. R. Evid. 201; *see also United States v. Wings*, 106 F.4th 793, 795 (8th Cir. 2024) (finding that the Court "may take judicial notice of any fact that can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.") (cleaned up).

12

occurred 700 to 800 feet east of Mile Marker 233 or 700 to 800 feet east of Mile Marker 233.6?  His description provides no answer, and the Court therefore cannot determine where Mr. Hampton proposes that the Second Crash occurred.

Mr. Hampton's description of the location of the Incident itself provides no further clarity.  The contemporaneous accident report for the Incident states that the Incident occurred at "ERM East IS 44 Mile 233.0."[6]  ECF No. 115-4 at 1.  But instead of crediting the contemporaneous accident report's description for the location of the Incident, Mr. Hampton relies on his visit to the crash site with Mr. Ware four years after it occurred.

Details on where exactly Mr. Ware told Mr. Hampton the incident occurred are scarce.  In his expert report, Mr. Hampton states that he "arrived at the crash scene, and met with Timothy Ware, and from information provided, the actual contact between the Ramirez truck and [Mr. Ware's] fire truck was 700 to 800 feet east of the curve." *See* ECF No. 109-1 at 4.  Mr. Hampton then concludes in his opinion 2 that "[the Incident] occurred 700 to 800 feet beyond the curve noted in the Mile Marker identification." *Id.* at 11.  At no point does Mr. Hampton define "the curve," and, as noted above, Mr. Hampton's description of the Mile Marker identification is ambiguous.  Considering the entirety of Mr. Hampton's export report, he places the location of the Incident at approximately the same place that he placed the location of the Second Crash, i.e., "approximately 700 to 800 feet east of Mile Marker 233 [on Eastbound Interstate 44 in

---

[6]  This location is further corroborated by Accident Report # 200537007, which places the First Crash thirty-six (36) feet after "ERM East IS 44 Mile 233.0."  ECF No. 115-8 at 1.

13

Missouri], or 233.6, past a curve, and in a straight location . . . ." *Id.* at 2. There is no dispute that the Incident and the Second Crash occurred at approximately the same location. But again, Mr. Hampton's description of where the Incident occurred does not provide sufficient factual information from which the Court can assess its reliability.

 Mr. Hampton's site visit with Mr. Ware occurred over four years after the Incident. ECF No. 109-5 at 44:1–9. When asked at deposition to explain his sight line calculation, Mr. Hampton testified that he went to the scene of the accident with Mr. Ware and that Mr. Ware "illustrated where the fire truck was sitting and that he recalled that debris being there [from the First Crash]." *Id.* at 44:15–24. The location of this debris appears to be the "information provided" by Mr. Ware to Mr. Hampton during the site visit and on which Mr. Hampton bases his opinions regarding the location of the Incident. Mr. Hampton further testified that he accepted as true Mr. Ware's statements that the debris was from the First Crash and not any other incident, though Mr. Hampton could not identify what the debris looked like or from what type of vehicle the debris came. *Id.* at 44:14–45:19. Additionally, Mr. Hampton testified that all photos he took during the site visit have been lost. *Id.* at 45:20–24. He then describes obtaining his measurement of 700 to 800 feet by measuring from the location of the roadside debris to his estimate of Mr. Ramirez's sight line. *Id.* at 45:25–46:10. Simply put, Mr. Hampton testified that he determined the location of the Incident and conducted his measurement based on the location of unidentified debris on the side of the highway at approximately the location that Mr. Ware remembers the First Crash had occurred four years prior.

14

The preponderance of the evidence does not support the reliability of Mr. Hampton's conclusion because neither Mr. Hampton nor Plaintiffs have shown that this is the type of information on which an accident reconstruction expert typically relies. Eschewing the Incident's location information in the accident report and the information provided by Mr. Ware in his deposition testimony, Mr. Hampton vaguely refers to information provided by Mr. Ware at a site visit and concludes that the Incident occurred 700 to 800 feet from that location.

Crucially, Mr. Hampton's placement of the Incident cannot be corroborated by photographs or accurate location data because the only data that he did collect—some photographs from the site visit—are missing and no location data was ever taken. On this record, the only way the Court can evaluate the reliability of Mr. Hampton's placement of the Incident is via his report's description. But this description is itself based on the unverified statements of Mr. Ware during the site visit and the location of some unidentified roadside debris of which there are no photos or location data. As has already been stated, Mr. Hampton's description in his report is self-refuting and the information he relied on to write that description is known only to Mr. Hampton and Mr. Ware. Plaintiffs have therefore failed to carry their burden to show by a preponderance of the evidence that Mr. Hampton has reliably determined where the Incident occurred. Thus, it is not based on sufficient facts or data, as required by Fed. R. Evid. 702(b) and (d).

Additionally, some of Mr. Hampton's subsequent analyses and conclusions are based entirely on his unreliable conclusion regarding the location of the Incident. Mr. Hampton's sight line calculation, which he uses to calculate Mr. Ramirez's potential

15

stopping distance that forms the basis for his opinion on causation, relies on his placement of the Incident. But because Mr. Hampton lacks sufficient evidence to reliably determine the location of the Incident, his subsequent conclusions must also be unreliable.

These problems are further confounded because neither the Court nor the Defendants can check Mr. Hampton's work. Plainly put, only Mr. Hampton knows where he placed the Incident and the sight line he used to conduct his braking calculations. An accurate location for the Incident cannot be gleaned from his report, nor can Mr. Hampton cite to verifiable evidence indicating the precise location of the Incident or where he placed the sight line. And these locations matter because, based on Mr. Hampton's calculations, a discrepancy of only a few hundred feet would result in a completely different series of conclusions. *See* ECF No. 109-1 at 4–5 (calculating that, under the conditions present on the day of the incident and based on where Mr. Hampton placed the sight line, Mr. Ramirez would have been able to stop his truck approximately 588 feet after applying the brakes). Therefore, all of Mr. Hampton's conclusions that rely on his location calculation must be excluded under Federal Rule of Evidence 702 because they too are unreliable and not based on sufficient facts or data. This includes all of Mr. Hampton's opinions that Mr. Ramirez could have applied the brakes and stopped before colliding with Mr. Ware's fire truck, that Mr. Ramirez could have slowed sufficiently to change lanes before colliding with Mr. Ware, that Mr. Ramirez failed to keep a safe lookout, and that Mr. Ramirez was the cause of the Incident.

16

Importantly, Defendants do not challenge all of Mr. Hampton's opinions, nor do all of Mr. Hampton's opinions rely on his placement of the Incident. Defendants only challenge Mr. Hampton's opinions 2 through 9. Of the challenged opinions, only opinions 2, 3, 5, 6, and 9 appear to rely on Mr. Hampton's placement of the Incident. Only those opinions will be excluded. Opinions 1, 4, 7, and 8, which do not appear to rely on where Mr. Hampton placed the Incident, will be admitted unless his testimony shows these opinions depend on his location of the Incident or barring any future successful evidentiary challenges. Defendants do not challenge Mr. Hampton's qualifications to offer these opinions, and the Court has not been presented any evidence of Mr. Hampton's qualifications from which it can decide whether he is qualified to testify to these remaining opinions.

B.     The Court Will Not Permit Plaintiffs to File an Exhibit in Sur-reply

"Sur-replies are largely disfavored in federal court." *Johnson v. City of Leadington*, No. 4:19-cv-2282-SEP, 2022 WL 179218, at *10 (E.D. Mo. Jan. 20, 2022) (quoting *Fuller v. Lion Oil Trading & Transp., LLC*, No. 1:19-cv-1020, 2020 WL 3057392, at *6 (W.D. Ark. June 9, 2020)). The Court has discretion to permit a sur-reply when justice requires, but sur-replies are not permitted as a matter of course. *Id.* "In particular, a surreply is unwarranted where the reply responds to the argument in the resistance and does not raise new arguments." *Id.* (citation and internal quotation marks omitted).

Plaintiffs have made no attempt to argue that Mr. Ware's affidavit is necessary to respond to arguments raised only for the first time in Defendants' reply. Instead,

17

Plaintiffs argue that the Court should consider the attached Affidavit because it provides additional support for the admissibility of Mr. Hampton's opinions.  Plaintiffs' have failed to cite any case from this Circuit indicating that sur-replies should be permitted to allow a non-moving party to submit additional evidence that it could have raised in direct response.  Rather, this appears to be an instance of a "strategic effort by the nonmoving party to have the last word on a matter." *In re Enron Corp. Secs.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006) (further noting that sur-replies are highly disfavored) (citation omitted).  Because sur-replies are generally disfavored and because Plaintiffs have failed to provide any justification for the need to file a sur-reply, Plaintiffs amended motion for leave to file exhibit in support will be denied.  The Court did not consider the Affidavit in ruling on the motion to exclude.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to exclude certain testimony of Plaintiff's expert, William E. Hampton, in **GRANTED in part** and **DENIED in part**.  ECF No. 109.  The Court will exclude Mr. Hampton from testifying regarding his opinions 2, 3, 5, 6, and 9 because Plaintiff has not established their admissibility by the preponderance of the evidence as required by Federal Rule of Evidence 702.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file exhibit in sur-reply (ECF No. 130) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' amended motion for leave to file exhibit in sur-reply (ECF No. 132) is **DENIED**.

Dated this 23rd day of April, 2025.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE