# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| TIMOTHY WARE and DIANE T. WARE,   ) | |
|                           ) | |
|        Plaintiffs,           ) | |
|                           ) | |
|      v.                    ) | No. 4:23-cv-00300-AGF |
|                           ) | |
| WIND TRANSPORT SOLUTIONS, INC.,   ) | |
| et al.,                         ) | |
|                           ) | |
|        Defendants.        ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for partial summary judgment filed by Defendants Wind Transport Solutions, Inc. ("Wind"), SB Transport, Inc. ("SB"), and Jose Francisco Ramirez' (collectively the "Defendants"). ECF No. 106. In support of the motion, Defendants filed a memorandum of law (ECF No. 107) and a statement of uncontroverted material facts ("SUMF") (ECF No. 108). Plaintiffs Timothy and Diane Ware filed their response brief (ECF No. 116), a response to Defendants' SUMF (ECF No. 117), and a SUMF of their own (ECF No. 118). Defendants filed their reply brief (ECF No. 140), a reply to their SUMF (ECF No. 135), and a response to Plaintiffs' SUMF (ECF No. 136). This matter is now fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant in part and deny in part the motion.

## Background

<u>Plaintiffs' Claims</u>

Plaintiff Timothy Ware first filed this case in the Circuit Court of Franklin County, Missouri, on January 5, 2023.  ECF No. 4.  His claims arise out of an October 26, 2020, motor vehicle accident between himself and Defendant Ramirez' (the "Incident").  On March 10, 2023, Defendant Wind removed the case to this Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446.

On October 5, 2023, Plaintiff Tim Ware filed a consent motion for joinder of his wife, Diane Ware, as a Plaintiff and Firemen's Insurance Company of D.C. and "John or Jane Doe" as Defendants.  ECF No. 31.  Also on October 5, 2023, Plaintiff Timothy Ware filed a consent motion for leave to file an amended complaint.  ECF No. 33.  The Court granted both motions.  ECF No. 36.

In the Amended Complaint, Plaintiffs raise eight counts[1] against several Defendants: Count I for negligence against Defendants Doe and Ramirez'; Count II for "reckless conduct" against Defendants Doe and Ramirez'; Count III for negligence per se against Defendants Doe and Ramirez' for alleged violations of Mo. Rev. Stat. §§ 304.022 and 302.780.1(1); Count IV for negligent infliction of emotional distress against Defendants Doe and Ramirez'; Count V for respondeat superior liability against Defendants Wind and SB; Count VI for negligent entrustment against Defendants Wind

---

[1]    While Plaintiffs' Amended Complaint includes headings setting out nine counts, the section Plaintiffs label "Count I" contains only general allegations applicable to all other counts and does not itself raise a cognizable cause of action.

2

and SB; Count VII for uninsured motorist proceeds against Defendant Firemen's Insurance; and Count VIII in which Plaintiff Diane Ware raises a claim of loss of consortium against all Defendants.  Plaintiffs seek actual damages, punitive damages, and damages for loss of consortium.  ECF No. 37.  Plaintiffs subsequently dismissed all claims against Firemen's Insurance and the unidentified Doe Defendant.  ECF Nos. 72, 98 and 99.  Therefore, Plaintiffs' only remaining claims are Counts I, II, III, IV, and VIII against Defendant Ramirez', and Counts V, VI, and VIII against Defendants Wind and SB.

Relevant Material Facts

Unless otherwise noted, the following facts are uncontroverted:[2]

On October 26, 2020, Plaintiff Timothy Ware, a firefighter employed by the St. Clair Fire Protection District, was dispatched to the scene of a motor vehicle accident that had occurred at approximately 4:10 p.m. in the far-right lane of Eastbound Interstate 44 near mile marker 233 in Franklin County, Missouri (the "First Crash").  Mr. Ware was driving Pumper/Tanker #8315 (the "Firetruck").

Upon arriving at the scene, Mr. Ware parked the Firetruck some distance southwest of the accident scene to warn oncoming drivers of the First Crash.  Mr. Ware

---

[2]     As a general matter, the Court accepts as uncontroverted for the sake of this summary judgment motion only those facts that: (1) are supported by record evidence; and (2) have not been properly contravened by citation to record evidence or when the cited record evidence does not specifically contravene the fact.  *See* E.D. Mo. L.R. 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

parked the Firetruck on the right shoulder and partially in the right lane of travel with its emergency lights on. Mr. Ware placed a line of cones from the Firetruck partially in the right lane of travel to diminish travel in that lane. Mr. Ware then returned to his Firetruck and sat inside the cab.

A second emergency vehicle, a Missouri State Highway Patrol cruiser driven by Trooper Christopher Patton, parked behind the Firetruck. There is a dispute about the precise location of Trooper Patton's cruiser, though it is undisputed that the cruiser was behind in the Firetruck.

At approximately 5:00 p.m., an unidentified tractor trailer truck came around a curve in the interstate, ran through the traffic cones that had been placed behind the Firetruck, and struck the front left portion of the Firetruck (the "Second Crash"), damaging the Firetruck's front bumper and driver's side mirror. The unidentified tractor trailer left the scene and was never found or identified.

Following the Second Crash, the Firetruck remained on the shoulder and in the right lane of travel. Mr. Ware did not immediately exit the Firetruck.

At approximately 5:03 p.m., Defendant Ramirez' approached the scene while traveling eastbound on Interstate 44. He was traveling at approximately sixty-seven (67) miles per hour in a seventy (70) mile per hour zone in a tractor trailer in the course and scope of his employment as an over-the-road trucker with Defendant SB. The road was wet. Defendant Ramirez's view of the Firetruck was obstructed by the curve of the roadway.

4

As Defendant Ramirez' approached the Firetruck, another tractor trailer was traveling immediately beside him in the left lane.  Defendant Ramirez' attempted to slow his truck by applying his brakes and to move into the left lane, but he was unable to avoid the Firetruck.  Defendant Ramirez' remained in the right lane, and his truck collided with the Firetruck's left side (the "Incident").  Mr. Ware suffered physical injuries as a result of the Incident, but he has not undergone any treatment related to the alleged harms to mental health or emotional distress.

Following the Incident, Defendant Ramirez' and Mr. Ware drove their respective vehicles to a nearby rest stop to discuss the Incident with a Missouri State Highway Patrol officer who had not witnessed it.  The officer was unable to obtain a statement from Defendant Ramirez' because of a language barrier.[3]  Defendant Ramirez' did not

---

[3]      Defendants challenge Plaintiffs' reliance on the statements in Crash Report #200537093 as inadmissible hearsay, including the statement regarding the trooper's inability to obtain a statement from Defendant Ramirez'.  Under Federal Rule Civil Procedure 56(c)(2), when a party objects that material cited in support of a fact cannot be presented in a form admissible in evidence, the burden shifts to the proponent "to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments, subdivision (c)(2).  Plaintiffs make no effort to respond to Defendants' objection or to offer how this evidence is admissible.  Thus, a strong argument can be made that Plaintiffs have waived their right to rely on the Crash Report.

Nevertheless, the Court observes that Under Fed. R. Evid. 803(8), "[a] record or statement of a public office" will not be excluded as hearsay if it sets out "factual findings from a legally authorized investigation; and . . . the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  As is recognized by courts and the committee notes to Fed. R. Evid. 803, "[p]olice reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer."  Fed. R. Evid. 803 advisory committee's notes to 1972 proposed rules; *see also Ratliff v. City of Shannon Hills*, 52 F. Supp. 3d 904, 910 (E.D. Ark. 2014).  Defendants, as the opponents of the evidence, have not argued the statements in the report lack trustworthiness, but instead raise a general hearsay

receive a traffic citation as a result of the Incident, any citation regarding his ability to speak English, or any citation for violations of any Federal Motor Carrier Safety Regulations ("FMCSRs").

At the time of the Incident, Defendant Ramirez' was not intoxicated, impaired, texting, sleeping, or fatigued, and he was looking at the road.  He possessed a valid Commercial Driver's License ("CDL") issued by the State of California and had seventeen (17) years of experience as a commercial motor vehicle driver with no history of accidents.

In 2020, as part of his employment with Defendant SB, Defendant Ramirez' received training on mobile phone restrictions, use of the logbook, hour of service rules, drug and alcohol restrictions and clearinghouse, road testing for tractor trailers, standard shift transmission training, training on vehicles over 26,001 Gross Vehicle Weight Rating ("GVWR"), and passed the required medical examination.  Defendant SB contracted with a company called Simplex to provide safety training.

Defendant Ramirez' was familiar with and understood that all fifty (50) states have a "move over" law similar to Missouri's, though he denied having specific knowledge of Missouri's "move over" law.  Defendant Ramirez' has a limited ability to speak English, and he admits that he's "made no real effort to learn English" since moving to the United States.  ECF No. 118-9 at 19–20.  His language abilities were not

---

objection.  Therefore, the Court will consider for the purposes of this motion the factual findings contained in Crash Report #200537093, including the finding that the officer was unable to obtain a statement from Defendant Ramirez' due to a "language barrier."

the cause of the Incident.  Defendant SB's owner, Sergio Mares, testified in his deposition that, to his knowledge, Defendant Ramirez' speaks English and would have passed the CDL skills test in English.

The Parties' Arguments

    A.   Defendants' Motion for Partial Summary Judgment

On March 10, 2025, Defendants filed their motion for partial summary judgment. Defendants seek summary judgment in their favor on the following issues: (1) Plaintiffs' claims for punitive damages; (2) Plaintiffs' claim for intentional infliction of emotional distress (Count II); (3) Plaintiffs' claim for negligence per se (Count III); (4) Plaintiffs' claim for negligent infliction of emotional distress (Count IV); and Plaintiffs' claim for negligent entrustment (Count VI).

As to punitive damages, Defendants argue that Plaintiffs have failed to adduce evidence sufficient to permit an award of punitive damages on any of their claims. Defendants argue that Plaintiffs will be unable to carry their burden to show by clear and convincing evidence that Defendant Ramirez' acted wantonly or with bad motive. Defendants contend that Defendant Ramirez' did not violate any federal regulations and that the undisputed facts show that he attempted to slow down and avoid colliding with the Firetruck but was unable to do so.  Similarly, Defendants point to undisputed evidence that SB provided Ramirez' with the necessary safety training, precluding punitive damages liability for SB based on an alleged failure to follow motor carrier regulations or industry standards.

Defendants separately argue that Defendant Ramirez's ability or inability to speak English has no bearing on whether he was competent to drive the truck and cannot support an award of punitive damages. Defendants cite to some evidence regarding Defendant Ramirez's English ability as well as cases where courts have found that a violation of the FMCSRs' English requirement is insufficient evidence to support an award of punitive damages.

Defendants also contend that summary judgment should be granted in their favor as to any potential punitive damages under a theory of respondeat superior because Plaintiffs are unable to meet the high burden of proof needed to show that Defendant SB acted willfully or with wanton disregard for the safety of others.

As to Count II, Plaintiffs' claim for intentional infliction of emotional distress, Defendants assert that Plaintiffs' claim must fail because the undisputed evidence shows that Defendant Ramirez' did not act intentionally or recklessly with an intent to cause Plaintiff Tim Ware emotional injury.

With respect to Count III, Defendants argue that Plaintiffs cannot cite sufficient evidence to support their claims for negligence per se for alleged violations of Mo. Rev. Stat. §§ 304.022 and 302.780.1(1). Defendants again note that the undisputed facts show that Defendant Ramirez' slowed down and attempted to avoid hitting the Firetruck. Defendants aver that this evidence alone is sufficient to grant summary judgment in their favor on Plaintiffs' claim that Defendant Ramirez' is liable for failure to follow Missouri's "move over" law, Mo. Rev. Stat. § 304.022. Defendants also contend that on these undisputed facts a reasonable juror could not find that Defendant Ramirez' was

8

driving "in a willful or wanton disregard for the safety of persons or property" as is required to prove a violation of Mo. Rev. Stat. § 302.780.1(1). For these reasons, Defendants ask the Court to grant summary judgment in their favor on the issue of negligence per se.

As to Plaintiffs' Count IV for negligent infliction of emotional distress, Defendants make the simple argument that summary judgment is proper because Plaintiffs have been unable to produce any evidence that Plaintiff Tim Ware sought any treatment for mental injury or emotional distress following the Incident.

Defendants also move for summary judgment as to Plaintiffs' negligent entrustment claim. Defendants cite to Missouri case law indicating that once an employer has admitted to respondeat superior liability, the employer is strictly liable for the negligent actions of its employees, and it is error to permit a plaintiff to collect against the employer under a separate theory of negligent entrustment. *See* ECF No. 107 at 15 (quoting *McHaffie ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 827 (Mo. 1995)). Defendants assert that under *McHaffie*, summary judgment is proper for Defendant SB on the negligent entrustment claim because it admits to respondeat superior liability, and there is thus no separate issue of negligent entrustment.

B.    Plaintiffs' Response

Plaintiffs oppose Defendants' motion for partial summary judgment, asking instead for the Court to proceed to trial on all remaining claims, including the issue of punitive damages.

9

Plaintiffs argue that the issue of punitive damages against both Defendant Ramirez' and Defendant SB should proceed to trial because genuine issues of material fact remain.  Specifically as to Defendant Ramirez', Plaintiffs assert that evidence indicates that he made no attempt to slow down or avoid colliding with the Firetruck. According to Plaintiffs, Defendant Ramirez' testified that he was not specifically familiar with Missouri's "move over" law, and this alone is sufficient evidence indicating that he was "willfully ignorant of his responsibilities and therefore manifested conscious indifference."  ECF No. 116 at 6.  Plaintiffs continuously assert that there is evidence indicating that Defendant Ramirez' did not slow down at all as he approached the Firetruck and was otherwise going too fast given the wet conditions.  Plaintiffs also claim that Defendant Ramirez' should have seen the other emergency lights, cones, and the patrol car before he reached the Firetruck.  Plaintiffs contend that because there is evidence of these warning signs, by implication, Defendant Ramirez' must have "exhibited complete indifference to the presence and significance" of those warning signs, so there is an issue for trial as to whether Defendant Ramirez' is liable for punitive damages.[4]  *Id.* at 7.

---

[4]     Plaintiffs cite to testimony and the expert report of their expert, Mr. William E. Hampton, to support several arguments regarding what Defendant Ramirez' saw as he approached the Firetruck.  Plaintiffs also cite to Mr. Hampton's conclusions that Defendant Ramirez' was able to stop or otherwise avoid the collision based on Mr. Hampton's sight line calculations.  Because the Court has determined that some of Mr. Hampton's opinions, including those used to support their arguments here for punitive damages, will be excluded under Federal Rule of Evidence 702 (ECF No. 141), the Court has not credited these opinions as facts sufficient to defeat summary judgment.  *See Davis v. City of Little Rock*, 122 F.4th 326, 331 (8th Cir. 2024) ("When ruling on a

Plaintiffs also assert that the issue of punitive damages as to Defendant SB should proceed to trial. Plaintiffs specifically refer to evidence of "negligent entrustment and related misconduct in terms of negligent hiring and training,"[5] in support. *Id.* at 11. Plaintiffs cite to evidence they say indicates that Defendant SB failed to provide Defendant Ramirez' with adequate training or an adequate road test to ensure that he was qualified to drive a commercial vehicle. Plaintiffs argue that because Defendant Ramirez' allegedly signed his own road test certification, Defendant SB violated FMCSRs requiring certification of a driver's qualifications to permit the driver to operate commercial vehicles, and thus punitive damages are appropriate. Plaintiffs further rely on the testimony of their expert, Mr. Hampton, that, in his opinion, he would not have hired Defendant Ramirez' and that Defendant Ramirez' was otherwise an unqualified and unsafe driver.[6] Plaintiffs also contend that Defendant Ramirez' alleged inability to speak English shows that he was not qualified under the FMCSRs, and that this further supports Plaintiffs' position that Defendant SB exhibited a "cumulative pattern of disregarding the proper qualifications for its drivers." *Id.* at 17.

---

summary judgment motion, the district court may consider only the portion of the submitted materials that is admissible or useable at trial.") (citation omitted).

[5] Elsewhere, Plaintiffs state that "[n]egligent entrustment is the underlying tort on which punitive damages are predicted." ECF No. 116 at 12. Plaintiffs have not pleaded claims for negligent hiring and/or negligent training. *See* ECF No. 37.

[6] Plaintiffs did not include these portions of Mr. Hampton's deposition as part of their SUMF, but instead cited to the deposition and attached it to their response. *See* ECF No. 116-8.

11

Regarding the negligence per se claim in Count III, Plaintiffs argue that there is a genuine issue of fact as to whether Defendant Ramirez' was aware that the Missouri "move over" law requires a driver to either move over or slow down upon approaching an emergency vehicle with its flashers on. Plaintiffs assert that there is a dispute regarding whether Defendant Ramirez' slowed down when approaching the Firetruck and whether he was traveling too fast given the wet conditions of the road. Plaintiffs then allege that Defendant Ramirez' violated Mo. Rev. Stat. § 304.012.1 and 49 C.F.R. § 390, though Plaintiffs did not raise these allegations in their amended complaint.

As to their claims of direct negligence against Defendant SB under a theory of negligent entrustment, Plaintiffs argue that the *McHaffie* standard is not appropriate here. Plaintiffs specifically argue that Missouri recognizes an exception to the generalized rule in *McHaffie*. This exception, according to Plaintiffs, permits a plaintiff to maintain a claim for negligent entrustment against a defendant employer who admits to respondeat superior liability when the plaintiff pleads punitive damages against the defendant employer based on a theory of direct liability. Basically, Plaintiffs suggest that because there are genuine issues of material fact regarding whether Defendant SB is liable for punitive damages under a theory of negligent entrustment, Plaintiffs' claims under that theory should proceed to trial.

Finally, as to the issue of the emotional distress claims, Plaintiffs argue that there is sufficient evidence in the record constituting a genuine issue of material fact regarding whether Defendant Tim Ware sought treatment for emotional distress damages. Plaintiffs cite to a single medical record indicating that Plaintiff Tim Ware has a history of post-

12

traumatic stress disorder ("PTSD") and depression.  According to Plaintiffs, this record is

sufficient to show that Plaintiff Tim Ware sought treatment for PTSD and depression

following the Incident.  Plaintiffs also cite to some testimony of Plaintiff Tim Ware's

treating physicians, but the cited testimony makes no mention of treatment for emotional

distress damages.  Plaintiffs also cite to an email from Plaintiff Tim Ware to his

attorneys—a document that is not included Plaintiffs' SUMF—to support the contention

that Plaintiff Tim Ware suffers from emotional distress following the accident.  ECF No.

116-14.  Plaintiffs then cite to testimony of Plaintiff Diane Ware regarding her loss of

consortium damages, including that Plaintiff Tim Ware's injuries have prevented him

from participating in an active family life or performing sexually.[7]

C.    Defendants' Reply

Defendants' reply brief addresses the issues raised in Plaintiffs' response.  First,

Defendants again argue that Plaintiffs have failed to present sufficient evidence

establishing a genuine issue of material fact as to punitive damages.  Defendants

emphasize that much of Plaintiffs' arguments regarding punitive damages fail to cite to

record evidence in support, and instead the undisputed factual record indicates that

Plaintiffs lack sufficient evidence to establish that Defendant Ramirez' acted with willful

ignorance or conscious indifference.  Defendants further argue that Plaintiffs have been

---

[7]      Like the email from Plaintiff Tim Ware to his attorneys and Plaintiffs' references
to the testimony of their expert, Mr. Hampton, Plaintiff Diane Ware's deposition
testimony is attached to Plaintiffs' response and is cited therein but is not otherwise
attached to or referenced in Plaintiffs' SUMF or response to Defendants' SUMF.  ECF
No. 116-15.

unable to establish that Defendant Ramirez' English ability falls short of the requirements in the FMCSRs or otherwise contributed to cause the Incident.  Defendants also assert that by not arguing to the contrary, Plaintiffs have conceded that Defendants are due summary judgment as to punitive damages on a theory of respondeat superior liability.

Additionally, Defendants contend that Plaintiffs have failed to support their right to punitive damages under a negligent entrustment theory.  Defendants dispute that Defendant SB improperly relied on a certification signed by Defendant Ramirez' regarding his road test, and instead cite to the FMCSR that permits a commercial carrier to accept a valid operating license in lieu of a road test.  According to Defendants, because Plaintiffs admit that Defendant Ramirez' had a valid CDL at the time of the Incident, summary judgment should be granted in Defendants' favor as to negligent entrustment and punitive damages relying on a theory of negligent entrustment.

Defendants also address the newly raised allegations of violations of Missouri law related to Plaintiffs' negligence per se claims.  Defendants cite to Eighth Circuit law indicating that it is not error for a district court to ignore theories of liability raised at the summary judgment stage that were not pleaded in a plaintiff's complaint.  ECF No. 140 at 12 (citing *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 878 (8th Cir. 2020)).

The remainder of Defendants' reply generally restates arguments raised in their motion and memorandum of law in support.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

14

Fed. R. Civ. P. 56(a). "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and [the Court] review[s] the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted). To withstand a motion for summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "The movant is entitled to judgment as a matter of law 'when the plaintiff has failed to make a sufficient showing of the existence of an essential element of her case.'" *Whitworth v. Kling*, 90 F.4th 1215, 1218 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)).

## Applicable Law

Federal courts sitting in diversity apply the substantive law of the forum state. *See KOKO Dev., LLC v. Phillips & Jordan, Inc.*, 101 F.4th 544, 547 (8th Cir. 2024). Here,

the parties agree that Missouri substantive law applies.  *See Cleek v. Ameristar Casino KC, LLC*, 47 F.4th 629, 635 (8th Cir. 2022).

## Discussion

A.    Punitive Damages and Negligent Entrustment

In Missouri, "[p]unitive damages are designed to inflict punishment and to serve as an example and a deterrent to similar conduct."  *Dugan v. Hyatt Corp.*, 707 S.W.3d 669, 687 (Mo. Ct. App. 2024) (citing *Call v. Heard*, 925 S.W.2d 840, 849 (Mo. 1996) (en banc)).  Recovery of punitive damages in a negligence action requires a plaintiff to "demonstrate that the defendant showed a complete indifference to or conscious disregard for the safety of others."  *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 714 (Mo. Ct. App. 2020) (citation omitted).  This claim must be proven by clear and convincing evidence.  *Id.*  "Clear and convincing evidence is that which tilts the scales in the affirmative when weighed against the evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved."  *Dugan*, 707 S.W.3d at 687–88 (cleaned up).  When determining whether the issue of punitive damages should be submitted to a jury:

> a court must consider "whether the evidence—giving full play to the jury's right to determine credibility, weigh the evidence and draw justifiable inferences of fact—is sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference."

*Id.* at 688 (quoting *Ingham*, 608 S.W.3d at 715).

16

Here, there is insufficient evidence in the record from which a reasonable juror could conclude that Plaintiffs are entitled to punitive damages.  This is true as to both the direct negligence claim against Defendant Ramirez' and as to Plaintiffs' claims of negligent entrustment against Defendant SB.

1.    Punitive Damages Are Not Submissible as to Defendant Ramirez'

At best, the uncontroverted evidence shows that Defendant Ramirez' acted negligently.  Plaintiffs try to paint Defendant Ramirez' as acting with evil motive and/or reckless indifference to Plaintiff Tim Ware's safety because, according to Plaintiffs, he failed to slow when he came upon the accident scene and the various warnings that accompanied the scene, including traffic cones, emergency lights, and a Missouri highway patrol vehicle.  Similarly, Plaintiffs point to Defendant Ramirez' failure to slow his speed in wet conditions as an indication of his recklessness.

But Plaintiffs have failed to controvert the record evidence indicating that Defendant Ramirez' applied his brakes and attempted to avoid hitting the Firetruck when he came upon it.  The uncontroverted evidence indicates that Defendant Ramirez' applied his brakes when he first saw the Firetruck and was unable to avoid hitting the Firetruck despite applying his brakes because he was traveling alongside another tractor trailer that blocked him from moving from the right lane to the left lane.  Plaintiffs have not come forth with evidence to the contrary, and instead rely on the fact that there were warning signals before the Firetruck.

While Plaintiffs rely on the warning signals, on this record, Plaintiffs cannot show (1) when Defendant Ramirez' first saw the various warnings; (2) whether the cones

17

Plaintiff Tim Ware had placed in the roadway in response to the First Crash were still there following the Second Crash that occurred just minutes earlier; and (3) the exact placement of the Missouri highway patrol vehicle behind the Firetruck.  But even considering these facts and the inferences drawn from these facts in Plaintiffs' favor, the most these facts can establish that is that Defendant Ramirez' acted negligently.  *See Levene v. Staples Oil Co., Inc.*, 685 F. Supp. 3d 791 (D.S.D. 2023) (discussing cases but applying South Dakota law, which, while similar to Missouri's standard, presents a slightly higher bar for the submission of punitive damages).  Upon analysis of the cases, the court in *Levene* observed "the more foreseeable the specific risk was to the driver, the more likely the evidence is sufficient for a jury to presume malice," and found that punitive damages were generally denied "in cases where the driver, despite acting negligently, did not have significant in advance warning signs that would have alerted the driver to the probability of an accident."  *Id.* at 800.  The *Levene* court cites to South Dakota Supreme Court precedent finding that a driver did not act willfully or wantonly because "nothing in the record can support a jury finding that the driver consciously realized, *before it was too late to avoid the collision*, that the injured party would in all probability turn in front of the driver."  *Id.* (quoting *Gabriel v. Bauman*, 847 N.W.2d 537, 543 (S.D. 2014)) (cleaned up).  Though not controlling under Missouri law, the Court believes that Missouri courts, too, would be loathe to submit punitive damages to a jury absent evidence that Ramirez' had sufficient advance warning that alerted him that an accident would occur.  *Cf. Schultz v. Great Plains Trucking, Inc.*, 707 S.W.3d 570, (Mo. 2025) (en banc) (affirming the trial court's submission of aggravating circumstances

18

damages instruction[8] against truck driver in wrongful death action when evidence was presented at trial that: (1) driver was "very experienced"; (2) driver was "very familiar" with the roadway where the accident occurred as he had driven the route "many, many times,"; (3) driver knew that he could not see through the blind curve he was approaching, but did not reduce his speed; (4) driver was familiar with Missouri's CDL manual and knew he was obligated to comply with it, including provisions requiring him to reduce his speed when approaching curves and in conditions like those present on the day of the accident; (5) driver violated these requirements by exceeding the posted speed limit and failing to slow just prior to the accident; (6) driver acknowledged that his failure to follow the provision of the CDL manual could result in severe injury or death; (7) driver testified that it was "common sense" that the faster his speed, the more severe the impact and injury; (8) plaintiff's accident reconstruction expert testified that the CDL manual required driver to reduce his speed to two-thirds of the posted speed limit given the wet road conditions; (9) plaintiff's expert testified that if driver was traveling at the appropriate speed, he would have been able to stop and avoid the collision; and (10) plaintiff's expert testified that driver's "incredible deviation from the standard of care" was the direct and contributing cause of the accident).

The Court finds that, on this record, no reasonable juror could find it highly probably that Defendant Ramirez' acted with an evil motive or with reckless disregard

---

[8]     "Damages for aggravating circumstances in wrongful death cases are governed by the same standards as punitive damages." *Oyler v. Hy-Vee, Inc.*, 539 S.W.3d 742, 746 n.2 (Mo. Ct. App. 2017) (citations omitted).

for the safety of Plaintiff Tim Ware.  On the contrary, the undisputed evidence shows that, upon seeing the Firetruck in the roadway, Defendant Ramirez' attempted to slow his vehicle and avoid colliding with the Firetruck.  ECF No. 108-5 at 44:23–45:1 (Defendant Ramirez' sworn deposition testimony indicating that he did not see any cones when approaching the Firetruck and "[w]hen [he] did see it, [he] hit the brakes.").  Plaintiffs have simply not come forth with admissible evidence refuting this testimony or otherwise indicating that Defendant Ramirez' had ignored warnings that would have made him aware that an accident was inevitable.  While the Incident still occurred, calling into question whether Defendant Ramirez' operated his vehicle negligently, and Plaintiffs have presented evidence that Ramirez' may have been driving too quickly for the road conditions, Plaintiffs have not presented sufficient evidence from which a jury could find by clear and convincing evidence that Defendant Ramirez' acted with evil motive or reckless disregard for Plaintiff Tim Ware's safety.

2.      <u>Punitive Damages Are Not Submissible as to Defendant SB</u>

a.      <u>Respondeat Superior</u>

Defendants argue in their motion that Plaintiffs should not be permitted to submit the issue of punitive damages to the jury on a theory of respondent superior against Defendant SB.  Plaintiffs make no arguments that Defendant SB should be subject to punitive damages on a theory of respondeat superior and instead couch their arguments regarding punitive damages against Defendant SB as limited to their negligent entrustment claim.  ECF No. 116 at 12 ("Negligent entrustment is the underlying tort on which punitive damages are predicated.")  Because Plaintiffs have failed to respond to

20

Defendants' argument regarding punitive damages under respondeat superior, Plaintiffs have waived their opportunity to raise it.  *See Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1054 (8th Cir. 2024) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.") (citation omitted).

Additionally, the Court has already found that Plaintiffs have failed to establish that punitive damages are submissible as to Defendant SB's employee, Defendant Ramirez'.  Here, Defendant SB does not dispute that Defendant Ramirez' was driving in the course and scope of his employment with Defendant SB.  Under a theory of respondeat superior, defendant employers are responsible for their employee's negligence only to the extent that the employee is held liable.  *McHaffie*, 891 S.W.2d at 826 ("Once vicarious liability for negligence is admitted under *respondeat superior* . . . . [t]he liability of the employer is fixed by the amount of liability of the employee.")  If Plaintiffs cannot bring a claim for punitive damages against Defendant Ramirez', they cannot bring a claim for punitive damages against Defendant SB based on a theory of vicarious liability.  The Court will therefore grant summary judgment in Defendants' favor as to the issue of punitive damages on Plaintiffs' claim of respondeat superior liability.

b.    Negligent Entrustment

There is insufficient evidence in the record to support submitting to the jury the issue of punitive damages against Defendant SB on a claim of negligent entrustment. Plaintiffs argue, and Defendants agree, that Missouri recognizes that violations of federal regulations or industry standards may be evidence supporting punitive damages.  *See*

ECF No. 116 at 4 (citing to *Coon v. Am. Compressed Steel, Inc.*, 207 S.W.3d 629 (Mo. Ct. App. 2006) and *Sanford v. K&B Transp., Inc.*, No. 1:20-CV-180-ACL, 2021 WL 2588902 (E.D. Mo. June 24, 2021)). But a violation of the law or industry standards must also be accompanied by a showing of "complete indifference or conscious disregard for the safety of others." *See Coon*, 207 S.W.3d at 639.

Here, Plaintiffs fail to cite to evidence in the record that could establish by clear and convincing evidence that Defendant SB violated federal regulations with complete indifference or conscious disregard for the safety of others. And because Plaintiffs will not be permitted to submit evidence of punitive damages on a theory of negligent entrustment, Defendants are entitled to summary judgment on Plaintiffs' negligent entrustment claim based on the holdings of *McHaffie* and *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386 (Mo. Ct. App. 2013).

In Missouri, a claim of negligent entrustment requires a plaintiff to prove the following elements:

> (1) the entrustee was incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the entrustee to cause the plaintiff's injuries.

*Elkins v. Academy I, LP*, 633 S.W.3d 529, 534 (Mo. Ct. App. 2021) (citation omitted). Negligent entrustment actions are a form of negligence action, and the standard for punitive damages for negligence claims stated above applies equally to claims of negligent entrustment. *See Dugan*, 707 S.W.3d at 687–88. For their claim of punitive damages against Defendant SB to survive the motion, Plaintiffs must therefore establish

22

that there is sufficient record evidence of negligent entrustment and that Defendant SB acted with complete indifference or conscious disregard for Plaintiff Tim Ware's safety. Additionally, if Plaintiffs are unable to show that there is evidence in the record that can clearly and convincingly show that they are entitled to punitive damages against Defendant SB on a theory of negligent entrustment, then under *McHaffie* the Court must grant summary judgment in Defendants' favor as to that claim.

In *McHaffie*, the Missouri Supreme Court held that once a defendant employer admits to respondeat superior liability, it is error to permit the plaintiff to pursue a separate claim of damages under a theory of negligent entrustment.  891 S.W.2d at 827. The Court reasoned that once a defendant employer admits vicariously liability under a theory of respondeat superior, there is no need to establish the employer's vicarious liability by any other means.  *Id.* at 826 ("If all the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose.").  However, in dicta, the Court stated that "it may be possible that an employer or entrustor may be liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee."  *Id.*

In *Wilson*, the Missouri Court of Appeals for the Western District adopted the "punitive damages" exception set out in the dicta of *McHaffie*.  The *Wilson* court reasoned that:

> If an employer's hiring, training, supervision, or entrustment practices can be characterized as demonstrating complete indifference or a conscious disregard for the safety of others, then the plaintiff would be required to present additional evidence, above and beyond demonstrating the employee's negligence, to support a claim for punitive damages.  Unlike in the *McHaffie* scenario, this evidence would have a relevant, non-prejudicial purpose.  And because the primary concern in *McHaffie* was the introduction of extraneous, potentially prejudicial evidence, we believe that the rule announced in *McHaffie* does not apply where punitive damages are claimed against the employer, thus making the additional evidence both relevant and material.

400 S.W.3d at 393.  Based on this reasoning, summary judgment is proper for Defendant SB on the theory of negligent entrustment only if Defendants can show that no reasonable jury could by clear and convincing evidence find that Defendant SB is liable for punitive damages on a theory of negligent entrustment.

Plaintiffs argue they are entitled to punitive damages against Defendant SB for negligent entrustment because Defendant SB acted in violation of some FMCSRs and that Defendant Ramirez' was unqualified to drive a commercial motor vehicle.  In support, Plaintiffs rely on two alleged violations of the FMCSRs: (1) Defendant SB failed to properly certify that Defendant Ramirez' took a road test, and thus did not ensure that he was qualified to safely operate a tractor trailer; and (2) Defendant SB failed to confirm that Defendant Ramirez' spoke sufficient English.  Plaintiffs also argue generally that Defendant SB failed to adequately train or otherwise confirm that Defendant Ramirez' was qualified to safely operate a commercial motor vehicle.  Though they do not couch their arguments in terms of the elements of negligent entrustment, in reading Plaintiffs' response, the Court believes they are arguing that Defendant Ramirez' was not competent to drive a commercial motor vehicle and that Defendant SB knew or had reason to know

24

that Defendant Ramirez' was incompetent.  But Plaintiffs have failed to cite to record evidence that a jury could find is clear and convincing evidence of complete indifference or conscious disregard as required to award punitive damages.

Under Title 49 C.F.R. § 390.3(e)(1)[9] "[e]very employer shall be knowledgeable of and comply with all regulations contained in this subchapter that are applicable to that motor carrier's operations."  Under Title 49 C.F.R. § 391.11:

(a)    A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. . . .

(b)    . . . [A] person is qualified to drive a motor vehicle if he/she—

(1)    Is at least 21 years old;

(2)    Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records;

(3)    Can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives;

(4)    Is physically qualified to drive a commercial motor vehicle in accordance with subpart E—Physical Qualifications and Examinations of this part;

(5)    Has a currently valid commercial motor vehicle operator's license issued only by one State or jurisdiction;

(6)    Has prepared and furnished the motor carrier that employs him/her with the list of violations or the certificate as required by § 391.27;

(7)    Is not disqualified to drive a commercial motor vehicle under the rules in § 391.15; and

---

[9]    The references included here to Title 49 of the Code of Federal Regulations are to the regulations in effect at the time of the Incident.

(8)     Has successfully completed a driver's road test and has been
        issued a certificate of driver's road test in accordance with
        § 391.31, or has presented an operator's license or a certificate
        of road test which the motor carrier that employs him/her has
        accepted as equivalent to a road test in accordance with
        § 391.33.

Under Title 49 C.F.R. § 391.31(a) "[A] person shall not drive a commercial motor

vehicle unless he/she has first successfully completed a road test in accordance with this

section."  Under Title 49 C.F.R. § 393.33(a) "[i]n place of, and as equivalent to, the road

test required by § 391.31, a person who seeks to drive a commercial motor vehicle may

present, and a motor carrier may accept—(1) A valid Commercial Driver's License . . ."

First, Plaintiffs argue that Defendant SB did not follow the FMCSR requiring a

carrier to issue, or confirm that a driver has passed, a safety road test before being

permitted to drive a commercial vehicle.  But there is no dispute that Defendant Ramirez'

possessed a valid CDL at the time of the Incident.  According to the above quoted

regulations, presentation of a valid CDL is sufficient to supplant the road safety test

requirement.  It is therefore irrelevant that there may be deficiencies in Defendant SB's

files regarding the certification of Defendant Ramirez' road test.  The mere fact that

Defendant Ramirez' had a CDL and presented this to Defendant SB forecloses a finding

that he or Defendant SB violated the FMCSRs requiring a road safety test.  As such, this

cannot be evidence in support of punitive damages.

Second, Plaintiffs argue that Defendant Ramirez' does not speak English and

therefore Defendant SB violated the FMCSR requiring that every driver can speak and

read English "sufficiently to converse with the general public, to understand highway

26

traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." 49 C.F.R. § 391.11(a)(2). Considering the evidence in the light most favorable to Plaintiffs, there remains a dispute regarding Defendant Ramirez's English proficiency. The officer investigating the Incident noted that he was unable to obtain a statement from Defendant Ramirez' because of a "language barrier," though the record contains no further detail, and the officer did not issue Defendant Ramirez' a citation for violation of the FMCSRs. The Court also notes that the officer's statement in his report does not establish that Defendant Ramirez' cannot speak English, though it does call into question whether he can speak English sufficiently "to respond to official inquiries." Defendant Ramirez' also testified that he has not made a real effort to learn English. On other hand, he possesses a valid CDL indicating that he passed the required CDL skills test, which is given in English. And Plaintiffs offer no evidence with respect to Defendant Ramirez's ability to understand English traffic signals and sign or to make record entries. Taking these facts together and considering them in the light most favorable to Plaintiffs, there remains a genuine issue of fact as to whether Defendant Ramirez' speaks sufficient English and therefore whether he is qualified to operate a motor vehicle under the FMCSRs.

There is also a question of whether Defendant SB had reason to know that Defendant Ramirez' was not qualified under the FMCSRs because of his limited ability to speak English. The uncontroverted evidence shows that Defendant SB, through its owner Sergio Mares, both (1) believes that Defendant Ramirez' speaks English, and (2) accepted his valid CDL as evidence that he's qualified to operate a commercial vehicle.

There is no evidence before the Court indicating that Defendant SB knew that Defendant Ramirez' cannot speak English. But the FMCSRs obligate employers to "be knowledgeable and comply with all regulations," including ensuring that a driver is qualified to drive a commercial vehicle and therefore to speak sufficient English as defined by 49 C.F.R. § 391.11(a)(2). Considering the record evidence before the Court in light most favorable to Plaintiffs, there is a genuine dispute of material fact as to whether Defendant SB had reason to know—through its obligations under the FMCSRs—that Defendant Ramirez' cannot speak English or speaks insufficient English and was thus unqualified to operate a commercial motor vehicle.

But assuming Ramirez' lacks sufficient English proficiency, this alone is insufficient to entitle Plaintiffs to a punitive damages instruction on a theory of negligent entrustment against Defendant SB. *See*, *e.g.*, *McCon v. Perez*, No. 1:17-cv-77, 2018 WL 4001971, at *2 (S.D. Miss. July 24, 2018) (finding that evidence that the driver was unqualified under the FMCSRs because he could not carry on a conversation with the general public along with evidence that driver was driving over the speed limit "would support a simple negligence claim, at most."). Plaintiffs do not dispute that Defendant Ramirez's English proficiency played no role in the Incident. Nor have Plaintiffs shown how this might rise to the level of "complete indifference or a conscious disregard for the safety of others," especially where, as here, Ramirez' passed a CDL skills test administered in English.

Plaintiffs further argue that this is merely one instance of Defendant SB consciously and recklessly disregarding their duty to ensure that Defendant Ramirez' was

qualified to operate a motor vehicle.  Plaintiffs argue that Defendant SB also failed to adequately train Defendant Ramirez', and thus also violated additional obligations under the FMCSRs.

As discussed above, the mere fact that Defendant SB did not subject Defendant Ramirez' to a safety road test meeting the FMCSR standard is not evidence of a violation of the FMCSR where, as here, Ramirez' had a valid CDL.  Also, it is undisputed that Defendant SB provided Defendant Ramirez' with training via a contractor, Simplex.  And instead of coming forward with evidence that Defendant Ramirez' received no safety training or insufficient safety training, Plaintiffs instead cite to Mr. Hampton's opinion that he would not have hired Defendant Ramirez' to drive one of his trucks because of some previous driving violations—though there is not evidence in the record of what these violations were.  Plaintiffs also make generalized, unqualified statements that any such training Defendant Ramirez' did receive from Defendant SB and/or Simplex was deficient.  For support, Plaintiffs, in a circular manner, cite to the fact that the Incident occurred.  Moreover, there is no dispute that at the time of the Incident, Defendant Ramirez' had seventeen (17) years of experience as an over-the-road truck driver with no history of accidents.  The record evidence here is insufficient to raise a question of fact as to whether Defendant SB was completely indifferent to or consciously disregarded the risk of letting Defendant Ramirez' operate their truck.

On this record—even permitting that a factual dispute remains as to whether Defendant Ramirez' speaks English sufficient to qualify him as a commercial driver under 49 C.F.R. § 391.11(b)(2)—the Court cannot conclude that there is clear and

29

convincing evidence sufficient to submit the issue of punitive damages on a theory of negligent entrustment to the jury.

Compare the uncontroverted facts here with those facts presented at trial in the primary case cited by Plaintiffs, *Coon v. American Compressed Steel, Inc.* The *Coon* case resulted from a motor vehicle accident in which the defendant's scrap truck driver failed to adequately secure his load. A metal plate falling from the vehicle and later caused the death of the plaintiff's decedent. The plaintiff raised a claim of wrongful death and sought punitive damages. The trial court awarded punitive damages, and the defendant appealed.

The Missouri Court of Appeals found that there was sufficient evidence from which the jury could find that punitive damages were warranted. Specifically, there was evidence that the defendant "made a conscious business decision to allow its drivers to decide whether and how a particular load should be tarped, strapped, chained, or otherwise secured." *Coon*, 207 S.W.3d at 638. Defendant's president testified that, prior to the fatal incident, he knew of ten other incidents of scrap metal falling out of defendant's trucks, though all involved damage to property and not personal injury. Plaintiff's expert testified that a fatal accident was foreseeable and preventable because the load could have been properly secured with a tarp. He also testified that defendant's failure to tarp the load was a violation of FMCSRs and various industry standards. He further testified that defendant "had shown a conscious disregard for public safety in failing to comply with federal and state law and industry standards, particularly in light of its experience with prior incidents of property damage and its overriding concern of

business profit in allowing drivers to consider how much time it might take to tarp a load." *Id.*  Additional evidence indicated that the defendant frequently failed to tarp or otherwise secure loads of scrap metal.  The Court found that this evidence "was sufficient to show, by clear and convincing evidence, that [defendant] should have known that its failure to routinely require drivers to secure loose pieces of scrap metal, by tarping or otherwise covering their loads, created a high probability of injury."  *Id.* at 639.  The Court further noted that the existence of previous incidents and the defendant's awareness of these incidents indicated a complete indifference or conscious disregard for the safety of others.

The evidence here falls far short of the facts in *Coon*.  There is no evidence indicating that Defendant SB had knowledge of other incidents like the one here but permitted their drivers to act in defiance of federal law or industry standards.  In fact, there is no evidence in the record relating to any other accidents that might evince a pattern of behavior like that established in *Coon*.  Defendant Ramirez' had a valid CDL, nearly two decades of experience as a commercial motor vehicle driver, and no history of accidents.  Defendant SB provided Defendant Ramirez' with safety training through Simplex, which included training on mobile phone restrictions, use of the logbook, hour of service rules, drug and alcohol restrictions and clearinghouse, road testing for tractor trailers, standard shift transmission training, and training on vehicles over 26,001 GVWR.  At best, there is a dispute over whether Defendant Ramirez' can sufficiently speak English and whether Defendant SB had reason to know that Defendant Ramirez' did not speak English.  On these facts, no reasonable juror could find that Defendant SB

acted with complete indifference or conscious disregard for the safety of others by entrusting Defendant Ramirez' with its truck. The Court will therefore grant summary judgment to Defendant SB on the issue of punitive damages. As Plaintiffs cannot go forward on an independent claim for punitive damages for negligent entrustment, and Defendant SB has admitted liability under respondeat superior, Defendants are also entitled to summary judgment as to Plaintiffs' claim for negligent entrustment.

B.    Negligence Per Se

In Missouri, "[n]egligence per se arises where the legislature pronounces in a statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct . . . and the court then adopts the statutory standard of care to define the standard of conduct of a reasonable person." *Lowdermilk v. Vescovo Building and Realty Co.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002) (citations omitted). To establish a claim for negligence per se, a plaintiff is required to show:

> (1) a violation of a statute or ordinance; (2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; (3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and (4) the violation of the statute or ordinance must be the proximate cause of the injury.

*Id.* (citing *Bus. Men's Assur. Co. v. Graham*, 891 S.W.2d 438, 455 (Mo. Ct. App. 1994)). Here, Defendant Ramirez' argues that the record does not establish that he violated either Mo. Rev. Stat. §§ 304.022 and 302.780.1(1).[10]

---

[10]    The Court does not address allegations that Defendant Ramirez' violated Mo. Rev. Stat. § 304.012.1 and 49 C.F.R. § 390, which Plaintiffs raise for the first time in response to Defendants' motion for summary judgment. *Richardson*, 957 F.3d at 878 ("[A] district court considering a defendant's motion for summary judgment does not err by

1.    Mo. Rev. Stat. § 304.022

At the time of the Incident, Mo. Rev. Stat. § 304.022 stated, in relevant part:

2.    Upon approaching a stationary vehicle displaying lighted red or red and blue lights, or a stationary vehicle displaying lighted amber or amber and white lights, the driver of every motor vehicle shall:

(1)    Proceed with caution and yield the right-of-way, if possible with due regard to safety and traffic conditions, by making a lane change into a lane not adjacent to that of the stationary vehicle, if on a roadway having at least four lanes with not less than two lanes proceeding in the same direction as the approaching vehicle; or

(2)    Proceed with due caution and reduce the speed of the vehicle, maintaining a safe speed for road conditions, if changing lanes would be unsafe or impossible.

There is sufficient evidence in the record permitting submission of a negligence per se claim to the jury for Defendant Ramirez' alleged violation of Mo. Rev. Stat. § 304.022.  It is uncontroverted that Defendant Ramirez' applied his brakes in an attempt to slow down as he approached the Firetruck and was unable to change lanes to avoid colliding with it because another tractor trailer was in the left lane.  It is also uncontroverted that Defendant Ramirez' was not issued a traffic citation following the Incident.  But there remains a dispute of material fact regarding when he would have seen the Firetruck and whether he maintained a safe speed for the road conditions.  It is undisputed that Defendant Ramirez' was traveling between 65 to 67 miles per hour and that the road was wet.  A reasonable jury could find, based on these facts, that Defendant

---

disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard.") (citation omitted).

Ramirez', despite traveling under the posted seventy (70) mile per hour speed limit, was traveling too fast for the road conditions when he observed the Firetruck and thus violated Mo. Rev. Stat. § 304.022.2(2) by failing to maintain a safe speed for road conditions.  The Court will deny summary judgment as to Plaintiffs' negligence per se claim for a violation of Mo. Rev. Stat. § 304.022.

#### 2.    Mo. Rev. Stat. § 302.780.1(1)

It is unlawful in Missouri for a person to: "(1) [d]rive a commercial motor vehicle in a willful or wanton disregard for the safety of persons or property."  Mo. Rev. Stat. § 302.780.1(1).[11]  The Court has already determined that Plaintiffs have failed to evince evidence sufficient to submit punitive damages against Defendant Ramirez', which is essentially the same standard of care provided by § 302.780.1(1).  The Court cannot permit a claim of negligence per se based on an alleged violation of Mo. Rev. Stat. § 302.780.1(1) if the evidence does not support a claim for punitive damages.  The Court

---

[11]    The Court questions whether Mo. Rev. Stat. § 302.780.1(1) is even the type of statute to which negligence per se can apply.  Generally, on a claim for negligence per se, the statute must set out a statutory standard of care different from a standard applicable to negligence at common law.  *See Whittaker v. CRST Malone, Inc.*, No. 4:18-cv-1048-HEA, 2019 WL 931966, at *1 (E.D. Mo. Feb. 26, 2019) (dismissing a negligence per se claim because the claim was based on an alleged violation of Mo. Rev. Stat. § 304.012, which the court found "does not indicate specific conduct that constitutes a violation, and does not set out a statutory standard of care."); *see also Cisco v. Mullikin*, No. 4:11-cv-295-RWS, 2012 WL 549504, at *2 (E.D. Mo. Feb. 21, 2012) (similarly dismissing claims premised on negligence per se because "the Missouri statutes [plaintiff] relies on do not set out a statutory standard of care.").  The statute at issue here does not set out any specific conduct constituting a violation and appears to be a codification of the punitive damages' standard at common law.

34

will therefore grant summary judgment for Defendant Ramirez' as to Plaintiffs' claim of negligence per se based on the alleged violation of Mo. Rev. Stat. § 302.780.1(1).

      C.    <u>Emotional Distress</u>

Establishing a claim for negligent infliction of emotional distress ("NIED") requires evidence sufficient to show the general elements of negligence, i.e., "a legal duty of the defendant to protect the plaintiff from injury, a breach of that duty, proximate cause, and injury." *Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017) (quoting *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)) (internal quotation marks omitted). The plaintiff must then also establish that "(1) the defendant should have realized that its conduct involved an unreasonable risk of causing the distress, and (2) the emotional distress or mental injury must be medically diagnosable and sufficiently severe to be medically significant." *Gibson v. Brewer*, 952 S.W.2d 239, 248–49 (Mo. 1997) (en banc) (citation omitted).

In Missouri, to maintain a claim of intentional infliction of emotional distress ("IIED"), a "plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Bloodworth v. K.C. Bd. of Police Comm'rs*, 89 F.4th 614, 623 (8th Cir. 2023) (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996) (en banc)). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," and "must be intended only to cause extreme emotional distress to the victim." *Gibson*, 952 S.W.2d at 249 (internal quotations and citations omitted).

35

Defendants argue that they are entitled to summary judgment on both the NIED and IIED claims because Plaintiffs have failed to show that Plaintiff Tim Ware sought medical treatment for any emotional distress injuries, nor can Defendant Ramirez' be said to have acted intentionally to cause Plaintiff Tim Ware emotional distress.  The Court agrees that, on this record, Plaintiffs have failed to show that Plaintiff Tim Ware has suffered a mental injury so severe as to be medically significant as a result of the Incident.  The only evidence Plaintiffs cite in support that has any bearing on this issue is a single note in a medical record indicating that Plaintiff Tim Ware has a history of depression and PTSD.  And his self-serving, unsworn email to his attorneys carries no weight in this context.  Plaintiffs offer no evidence that the depression and PTSD were caused by the Incident at issue here, and the single medical record cited in support is insufficient to show that Plaintiff Tim Ware suffers from a severe enough emotional injury as to be medically significant.  Therefore, Plaintiffs have failed to establish both the causation and damages requirements of a NIED claim.

Plaintiffs have similarly failed to offer any evidence that Plaintiff Tim Ware's emotional distress caused him bodily harm, as required to establish a claim for IIED.  The Court also agrees that Plaintiffs have failed to come forth with sufficient evidence indicating that Defendant Ramirez' intentionally sought to inflict emotional distress on Plaintiffs.  Without evidence supporting these emotional distress claims, the Court cannot submit them to the jury.  The Court will therefore grant summary judgment in Defendants' favor as to Plaintiffs' claims for both negligent and intentional infliction of emotional distress.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for partial summary judgment is **GRANTED in part** and **DENIED in part**.  ECF No. 106.  Summary judgment is granted for Defendants as to Plaintiffs' claims for punitive damages, negligent entrustment (Count VI), negligence per se for a violation of Mo. Rev. Stat. § 302.780.1(1), negligent infliction of emotional distress (Count IV), and intentional infliction of emotional distress (Count II).  Summary judgment is denied as to Plaintiffs' claim for negligence per se as to Defendant Ramirez' alleged violation of Mo. Rev. Stat. § 304.022, which will proceed to trial.

Dated this 9th day of June, 2025.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE